Mr. Bloomberg, you reserve three minutes of your time for rebuttal, correct? That's correct. Okay, you may proceed. Thank you, Your Honor. Mark Bloomberg for Appellant AAMP. The issue before the court is actually a very well-defined issue, and the claims have been found to be obvious over a reference called daily, and there's no issue about that. The issue is, is daily prior art or is daily not prior art? And AAMP's patent is the result of a number of applications, two of which are relevant here, both of which predate daily. So if the disclosure of those applications is adequate, daily is no longer a reference. The issue that is relevant here is something called hard wire, and I think... We're very familiar with the facts, so if you want to jump right into the issues. Sure. Okay. Fine. I think that the key issue here is that both of the applications have certain disclosures that are in common, and when you take those applications that are in common, they show disclosure of hard wire. The first is they say that most of the radios are hard wired to begin with, and then they say that they are connected by a wire between the steering wheel and the stereo, and intervening that for the purpose of this invention is the interface device, which converts the signal. What comes out of that interface device is a wire, which is cable 112, which is located approximate to the stereo. So the only piece that is really missing of this whole part is that you take the wire and you plug the wire into the radio, which is intended to receive a wire. I could try to understand what your argument is, that there wasn't substantial evidence to support the board's finding that the specification didn't disclose hard wired, because I guess I suppose it would understand that the inventor had this within his understanding, because it's so basic. Is it something like that? That's right. It's ultimately, it's not complex, and it's ultimately predictable. That one would plug a wire into the radio, which is exactly how these things worked and were designed to happen. It doesn't specifically say that in the specification, at least in the first specification, but that would be a thing to do. So predictable, your use of the word predictable I guess makes me think of the standard line that what's obvious is not necessarily described. How do you get onto the described side of the line by saying it was predictable? Because in this particular instance, what the patent does talk about is that you hard wire the existing radios, and the only thing that is not happening here is it doesn't specifically say to stick the plug in. That's the only piece that's missing. For one of the applications, and I might add that of the two applications, the second one, which is the 449 application, which was later the two applications, it is specifically described. How do you respond to the argument that you had to waive that, your reliance on the 449 application, because that was something that was presented to the examiner, but it was never presented to the board? It makes it difficult for us to pass on it now. The pieces that were before, 449 was in front of the board because, as I just described, there's the commonality in large part of the description. But now you're talking about the additional... Whether they had the 449 specification in front of them, of course they did, because it's the same specification as the patent suit. That's not the question. The question is whether you argued that the specification supported the claims, provided written description support for the claims, as a separate argument from the other argument you were making where you were relying on the application, I think it was the 952 patent specification, which is the 627 application. Yes, right, the 952. Yes, there was the commonality that was argued, but there was not a specific discussion of the later application to the board. But the other reason that there's not... So it was common, but you are correct that it wasn't. But the other reason why waiver does not apply here is if you look at the waiver cases, what they deal with is they deal with a new argument. They don't deal with additional evidence to support an argument that was made. And the whole argument that was in front of the board was the disclosure within the specification. And although this particular part of the specification may not have been discussed then, it's just additional evidence. There should be sufficient evidence that I can... The evidence that was... I understand your position. Your position is that it's additional evidence in support of an overall argument that you should be able to predate. And another way to look at it is it's a separate issue because one question is whether the And the other question is whether the 449 application provided written description support. But I understand your position. It's a... Right. Exactly. It's distinct, for example, if all of a sudden we were now saying, oh, well, you know, daily does not... It's not obvious over daily. That would be a new argument, and yeah, waiver would apply to that. And so with respect to the part that's missing, as we discussed before, which is the fact that there's not direct wire to a aftermarket radio, that is specifically disclosed in the later 449 patent. And in particular, figure 9 shows devices... Where is it disclosed in the 449 patent? Sure. If you look at... In the 449 patent, there's figure 9, and there's an element in figure 9... Where are we at? I'm sorry, I've got the wrong number. The 449 application becomes the 510 patent, which, I'm sorry, the 570 patent, which is at the appendix starting at... Show me the 449 application. 449 application. Okay. Let's see, that's at 3833 is the start. Okay. Let's see, it's figure 9. And... Do we have to look at the patent to find the figures? That may be. That would be easier. So the patent that we're talking about now is going to be the 570 patent, which is going to be at 5120. And so at 5133, I'm sorry for the delay, that's the page that we want to look at. And the important item there is going to be 406A, which is on the top right. And that can be different things, but one of the things that the patent says is that can be an aftermarket radio. Another thing that the patent says is that it can be hardwired. So you're claiming that the figure on 5133 is a disclosure of a wired connection between the interface device and a replacement radio? That's correct. That in connection with the description of 406A. Does the description of this figure support that? Yes. Show me. Okay, so if you look at column 18, line 3. It's still in the 570 patent? Yes. Okay. Column 18, line 3 to 4 says, therefore, the first entertainment component 406A may comprise the aftermarket stereo system 104. So that tells you that 406A is aftermarket. And then if you turn to column 21, the 66 to the top of column 22, it says, moreover, the scope and functionality of the control output signals, including hardwired and wireless control signals, are applied to the microcontroller 142, the first entertainment component 406A. So that is telling you that a hardwired signal can be applied to the entertainment component after going to the interface. It's your view that that language, including hardwired and wireless control signals, means you could have one or the other? That's correct. Because in this patent, the preferred embodiment is wireless, which is not what we're talking about now. But it's not limited to that preferred embodiment. Okay. And so what this tells us is if you look at that application, which predates daily, that does it. Now the PTO responds that these disclosures come from two separate embodiments, right? That's what they say. But the one and only place in the patent where component 406A is disclosed is figure 9. That is the embodiment. And it can be put together in different ways. But that's basically embodiment structure. And there's alternative ways that that can be put together. But it's the same embodiment. So it tells you that when you have the 406A component, could be aftermarket, could be wired, hardwired. And there are other combinations. It could also be a flow, but it could be that one, which is what's important here. Okay. You're in your rebuttal time. You want to save your time? Yes, why don't I do that. Thank you very much for that. Attorney Lateef. Good morning, Your Honors. May it please the Court. There's only one issue in this appeal, and that is whether the 627 application has written descriptive support for the wired limitation. For the wired limitation that is in the 825 patent, such that Daly qualifies as prior art. I understand that my counsel over here, appellant, would like to argue that the 449 patent is still in play. But it is not, because the whole point was that Daly was found to be, the examiner used Daly as a rejection, a 102 and 103 rejection. And in arguing that Daly is not prior art, they appealed to the board under the 627 application. You can have this argument that it was a continuation. The 825 is a continuation from the 449 patent, so they share the same spec. But there was never any argument saying, oh, look, the 449 application is where we should also look for a wired. That was presented to the examiner, but not to the board. Correct. The examiner made a finding and said, we see certain language here in the 449 application that may allude to something. But actually, if you look at 46A, 46A in one embodiment is a factory stereo, and in another embodiment is an aftermarket stereo. And appellant never traversed that rejection, never went to the board to try to defend itself against the examiner's rejection. And so when the board got this case, all the board did was look to whether or not the 627 application, which is what they argued, had a wired limitation or not. So that is what is before this court, and that is what this court needs to figure out. We, obviously, the PTO, argue that the inventor did not have possession of a wired output connection when the filing date of the 627 application. If you look at the 627 application, it talks about interface circuit 110 sending output signals to the replacement stereo 104 through the transmission cable 112. And at the end of this transmission cable is a transmitter 154, and that transmitter is an infrared diode. This idea that you can just plug this cable into a replacement stereo doesn't make any sense when you have an infrared diode at the end of it to send wireless signals. And figure 3 and figure 4A of the 627 application make this clear. And the board found, if you look at figure 3, there are these little squiggly lines to show the wireless output that's happening. You can't simply plug this in. Appellant made arguments that it's possible that this transmitter is somehow optional, but there's nothing in the 627 to suggest that it's optional, and there's nothing to suggest that the inventor, at the time of filing the 627 application, possessed some way to take that transmitter off and plug this cable in. So, given all of that, taking the 449 off of the table and looking strictly at the 627, there's no wired connection here. There's no RAN descriptive support. What about the argument that this is pretty simple technology, and a POSA would immediately know that you could have this alternative? I understand that argument, and it is simple technology. You have wired or you have wireless. But the standard for written descriptive support is whether or not, looking at the four corners of the specification, whether a person of ordinary schooling would be able to understand that the inventor had possession of whatever it is you're seeking. And in this case, that is a wired output transmission. And just because wired and wireless are not complex ideas, if you look at the 627 application, everything about it shows that the inventor had possession of something wireless. There's no way for anything to reach the replacement stereo. I don't know if that answered your question. Okay. So, if there are no further questions, I'll yield my time. Thank you. Mr. Bloomberg, I asked you some questions that had you going back into the record quite extensively, and I used up your time, so I'm going to restore you to four minutes, to be fair, okay? Thank you, Your Honor. I think that we've discussed the 449, so let's not get into that at all. But I think that there's some issues with the 627, which is that, yes, it is true that there is not a specific disclosure of plugging the wire into the radio. But, as I said before, it's predictable. That's the way it is. Now, it's true that there's a description of putting a diode at the end of the wire. Well, you need to do that, because one of the things that you do in the preferred embodiment is, for that embodiment, you would have to do that, because it has to be able to communicate wirelessly. That is not to say that a wire has to have that component at the end of it. It doesn't. It's just a wire, and you just plug the wire in. But if you did want to use that for wireless, you would have to modify it in order for it to work. So the fact that that embodiment talks about putting that additional piece in does not diminish from the fact that you do have a wire, cable 112, that goes to the stereo, and that that wire would be plugged into the stereo just as the stereo is intended to receive  The question here is whether the inventor in the 627 application had possession of an invention that included or was based on the interface being hardwired to an aftermarket radio. And that's not – and you're arguing that you could – that a poser could look at that and say that the inventor had possession. How can that be if there's no mention? It is because it is there. That specific detail, which is a predictable, non-complex detail, is not exactly spelled out, because the way that these devices worked is there was a wire that goes from the stereo – I'm sorry, from the steering wheel to the stereo, and the stereos have an input for the wire to be. And all that's really happening here is that in between the steering wheel – So that worked, but then when you came out and replaced the radio with an aftermarket replacement, then you had a problem. You couldn't just hardwire it the way it was wired before. Well, that much you can do, because there really is no difference between a radio and aftermarket radio. It's just that whether it came with the car or it was put in the car afterwards. The only reason it's a problem for the two is that the signals might have to be changed. That's why you have the translation. But in terms of how it's connected up, that there's a path from the steering wheel to the stereo, that is no different. And that's really not part of the invention, although that is in the claim, yes. But that connection is not there. Now, if you wanted to go into the wireless, which is really not an issue now that we're But for the wired one, all that happened is you were just going to connect these stereos up the way they always had been using the intended way, and it's just a question of putting a wire into the receptacle for receiving a wire. Okay. All right. Well, thank you for your argument. Okay. All right. Thank you very much, Your Honor. Yes.